## PROVIDENCE ENGINEERING CORPORATION v. DOWNEY SHIPBUILDING CORPORATION.

### CHASE NAT. BANK OF CITY OF NEW YORK v. SAME.

(District Court, E. D. New York. May 14, 1925.)

**1. Taxation ⬅171½—Failure of corporation or its receivers to proceed under tax law to question validity of tax precludes assertion of invalidity of state's claim therefor.**

Failure of corporation or its receivers to proceed under Tax Law, §§ 199, 200, and 219, to question franchise tax, precludes attack on validity of such tax when asserted by state as claim against corporate assets.

**2. Taxation ⬅117—That receivers of corporation have not exercised corporation's right to conduct business held not ground for attack on franchise tax.**

That corporation receivers have not carried on its business during period covered by franchise tax is not ground for attack on validity of state's claim; corporation having enjoyed benefit of right to conduct business.

Receivership proceedings by the Providence Engineering Corporation and by the Chase National Bank of the City of New York against the Downey Shipbuilding Corporation. On exceptions to report of special master in the matter of the claim of the state of New York for franchise taxes. Exceptions sustained.

The following is the special master's report:

"To the Honorable Judges of the United States District Court for the Eastern District of New York.

"Henry C. Turner, special master, appointed herein by order of this court, made April 27, 1923, submits herewith his first report covering the claim of the state of New York for license tax and franchise taxes amounting to the sum of $23,279.47.

"The special master states that he has taken the required oath, which is attached hereto and made a part of this report.

"On January 8, 1925, he subscribed and caused to be served on the Attorney General of the state of New York, attorney for the claimant, at his office, No. 49 Chambers street, in the borough of Manhattan, city of New York, a notice that a hearing would be had upon the aforesaid claim at the office of the special master, No. 165 Broadway, borough of Manhattan, city of New York, on January 27, 1925, at 10:30 a. m. Pursuant to said notice, there appeared before him at that time and place, Robert P. Beyer and William Matthews, Esqs., Deputy Attorneys General, in behalf of the claimant, and Messrs. Cadwalader, Wickersham & Taft, attorneys, by Kenneth E. Walser, Esq., of counsel for the receivers, in opposition. Witnesses were sworn and examined both in behalf of the claimant and of the receivers; testimony was taken, and documentary evidence introduced.

"The Attorney General, by Mr. Beyer, stated upon the record that so much of the claim as was represented by the item of $9,000 for license fee was to be eliminated from consideration by the special master, that matter having been adjusted between the receivers and the state tax commission, and also that so much of the claim as was represented by the amount of $1,296 for penal interest, etc., was withdrawn. There thus remain for the consideration of the special master two items constituting the claim, namely, the franchise tax assessed against the defendant corporation for the period ending October 31, 1921, in the sum of $7,200 and the franchise tax assessed against

8 F.(2d)—20

the defendant corporation for the period ending October 31, 1922, in the sum of $5,783.47.

"As to the Franchise Tax Assessed for the Period Ending October 31, 1921, in the Sum of $7,200.

"The tax return received in evidence, upon which this assessment is based, was verified for the corporation by Mr. A. A. Cannon, its secretary and treasurer. From the return it appears that the capital stock of the corporation, issued and outstanding, consisted of $2,200,000 par value of preferred stock, and 50,000 shares of common stock without par value. From the report, it does not appear that the corporation had assets located outside of the state of New York, and, in the manner and place provided upon the return, the corporation, through its secretary and treasurer, consented that it might be taxed upon its entire issued capital stock at one mill on the dollar as provided by law.

"On February 4, 1921, the tax department made an assessment for franchise tax against the defendant corporation for the year ending October 31, 1921, in the amount of $7,200, and a notice of the assessment was forwarded to the defendant corporation at Arlington, Staten Island, N. Y., by first-class mail, under date of February 4, 1921.

"In the meantime, however, and on January 6, 1921, in a proceeding in equity, pending in the United States District Court for the District of Delaware, an order had been made appointing a receiver, William G. Coxe, to whom the defendant corporation had been directed to deliver all its property and effects, and who was authorized to hold, manage, and conduct the business of the defendant corporation within the jurisdiction of the court. By this same order, the defendant corporation and its various officers, agents, and employees were restrained from further dealing with the properties and assets of the corporation.

"On January 7, 1921, in a proceeding in equity, entitled in the United States District Court, Eastern District of New York, an order was made appointing William G. Coxe, J. Ernest Allen, and William F. Purdy as receivers of all the properties and assets of the defendant corporation within the Eastern District of New York, with full authority to continue to manage and operate the business of the defendant until the further order of the court.

"The testimony shows that these receivers duly qualified and took into their possession

the various properties and assets of the defendant corporation, and were in actual possession and control of the business and assets of the defendant at the time of the receipt of the assessment notice aforesaid.

"As to the foregoing facts there appears to be no dispute.

"Testimony was offered by the receivers to show that they had been in conference and correspondence with the state tax commission and with the Attorney General with reference to the propriety and validity of the assessment, but I fail to find any evidence whatever that the receivers or the defendant corporation, or any one in behalf of either, has made any application or taken any proceeding looking to a review or revision of the tax assessment pursuant to and in the manner provided by sections 219, 199, and 200, of the Tax Law (Consol. Laws N. Y. c. 60). At the outset, therefore, the special master is confronted with the question raised by the failure properly to apply for the review, adjustment, and correction of the tax, and whether or not such failure on the part of the corporation or on the part of the receivers is sufficient now to bar consideration by the special master in this proceeding, of the propriety and validity of the assessment.

"In my opinion, the failure on the part of the corporation and of the receivers to follow the method of review laid down in the statute does not, in this proceeding, bar consideration of the constitutionality of the taxing act or the legality or propriety of the assessment.

"I am of the opinion that the facts with reference to the present claim are distinguishable from those in Gorham Mfg. Co. v. State Tax Commission, decided November 17, 1924, 266 U. S. 265, 45 S. Ct. 80, 69 L. Ed. 279. In that case, the corporation, having submitted itself to the jurisdiction of the state and having obtained a license to transact business within its borders, failed to follow the orderly procedure laid down in the taxing act for review of the assessment, and thereafter by its own application to a federal tribunal sought to obtain relief from the assessment. The method of review laid down by the act was full and complete. The failure on the part of the tax commission to grant the relief sought was reviewable by certiorari in the courts of the state, with the right of appeal therefrom as to any provisions of the act as might be unconstitutional. No right or constitutional privilege of the corporation was in any manner abridged. No fundamen-

tal right lost or destroyed. The corporation elected to proceed in its own way, and without reference to the procedure laid down by the act, and, in view of these facts, the Supreme Court declined to interfere or to give its approval to the irregularity of the procedure.

"In the case at bar, at the time the assessment was made and the notice of assessment mailed, the assets and property of the defendant corporation were in the custody of the United States District Court, which, through its officers duly appointed, was in actual possession and control thereof. The court had thus taken possession and control of the assets through its receivers in an equity cause pending of which it has proper jurisdiction. The duty lies upon the court, not only to protect the assets of the estate and the rights of the corporation and its stockholders therein, but also to conserve it for the benefit of any other persons who, upon trial of the issues and a proper judicial determination, shall be found entitled to participate therein.

"In this proceeding, every opportunity and a proper tribunal is offered for the presentation of any and all claims against the defendant corporation and its estate. By its equity power to enjoin, the court is at all times in a position to stay the collection by foreclosure of lien or otherwise of any and all claims upon debts due from the estate, and, except as the court by its order may authorize and direct, the receivers are without power to settle or compromise claims existing against the defendant corporation.

"Into this court and into this proceeding the state of New York now comes as a claimant, submitting thereby to the jurisdiction of the court. The issue is no longer between the state of New York and the defendant corporation, but affects the rights of any and all parties who may be interested in the estate, and the equity power of the court may properly be called into play in order that justice may be accorded all the interested parties. The objection to the claim of the state of New York as filed is no longer an effort on the part of the corporation taxpayer to seek another tribunal than that provided by the taxing law for a review and revision of the tax, but is an incident in the administration of the estate by the District Court, and is made for the benefit of all persons interested therein.

"While, therefore, it is true that in determining the validity of the assessment the law as laid down by the courts of the state

of New York must govern the interpretation of the Taxing Act, nevertheless, the exclusive character of the method of review outlined in the taxing act will not, under the circumstances, preclude this court through its special master in this proceeding from inquiring into the legality and propriety of the act according to those standards.

"In view of the determination by the special master that this court is not now precluded from considering constitutional questions affecting the validity of the tax, the second question arises, namely, the constitutionality, the legality, and the propriety of the assessment.

"The tax as levied in the sum of $7,200 represents a tax of one mill upon the preferred stock of $2,200,000, plus one mill on 50,000 shares of common stock of no par value, taken at a valuation of $100 per share for the purpose, pursuant to section 214 of the Tax Law as that law read in 1920 (Laws 1920, c. 640). So much of the provision of section 214 as attempted to fix a value of $100 a share on the nonpar stock has been declared to be unconstitutional by the Appellate Division of the Supreme Court of the state of New York, in its opinion in the case of People ex rel. Terminal & Town Taxi Corporation v. Walsh et al., 202 App. Div. 651, 195 N. Y. S. 184. In that case also it was held that the amendment of the Tax Law attempted to be made by chapter 640 of the Laws of 1920, which contained the unconstitutional provision above referred to, did not in express terms repeal the provisions of section 214 of the Tax Law as it had existed previously, and that the effect of holding the latter provision unconstitutional was therefore a restatement of the earlier provision.

"Section 214 of the Tax Law, as it existed prior to the enactment of chapter 640 of the Laws of 1920, provided:

" 'If such a corporation has stock without par value, then the base of the tax shall be on such a portion of its paid in capital as its real and tangible personal property in this state bears to its entire real and tangible personal property.'

"No evidence has been offered to the special master either upon the face of the return or otherwise which will show the actual value of assets located in the state of New York.

"The report shows that there has been issued $2,200,000 of preferred stock and 50,000 shares of common stock of no par value. There is no basis, therefore, for estimating the value of the assets of the corporation located within the state of New York other than the par value given for the preferred stock issued, and the decision of the special master must therefore be that the only value shown upon which a tax can be assessed is the sum of $2,200,000 which, at the rate of one mill, justifies a tax in the sum of $2,200,000. It is the opinion of the special master therefore that, under the authority of New York v. Jersawit, 263 U. S. 493, 44 S. Ct. 167, 68 L. Ed. 405, the entire tax being payable in advance and the tax year commencing on the 1st of November, 1920, the item of the claim having to do with franchise taxes assessed for the period ending October 31, 1921, should be allowed in the sum of $2,200,000 without interest and disallowed as to the balance.

"As to the Item of Franchise Taxes for the Period Ending October 31, 1922, in the Sum of $5,783.47.

"The facts with reference to the corporation and the control and operation of its assets here are different than those which existed for the period ending October 31, 1922.

"The receivers were in possession during the entire period. The return was verified by William F. Purdy, one of the receivers, and an affidavit attached thereto wherein, after reciting the appointment of the receivers and that they were duly qualified and acting, and that the defendant corporation had been restrained from doing business and its officers restrained from interfering with the assets of the defendant, a prayer was added that the defendant corporation be relieved of taxation for the ensuing year. The report showed no net income, and that all the assets of the corporation were located in the state of New York.

"The average monthly value of bills and accounts receivable were shown to be $71,373.43; the average monthly book value of its real property as $3,416,800; the average monthly book value of its tangible personal property as $2,878,768.17; the average monthly bank and cash balance during the year to be $100,427.71; and the average amount of indebtedness for the year to be $683,894. The capital stock issued was shown to be 22,000 shares of preferred stock of the par value of $2,200,000 and 50,000 shares of common stock with no par value.

"The record shows that upon this report, and under date of December 16, 1921, the state tax commission assessed a tax under article 9-a of the Tax Law in the amount of $5,783.47 and on that date mailed a notice

of assessment addressed to the Downey Shipbuilding Corporation, William G. Coxe, J. Ernest Allen, and William F. Purdy, receivers, at Arlington, Staten Island, N. Y.

"The evidence shows that during the entire tax year from November 1, 1921, to October 31, 1922, the receivers were in actual possession of the assets and property of the defendant corporation under order of the United States District Court. The issue is raised as to whether or not the transactions had by the receivers, constituted doing business within the state of New York.

"As in the case of the tax assessed for the preceding year, the special master is unable to find in the record any evidence that the receivers of the corporation proceeded in the manner defined by the act for review or revision of the assessment, or made any application to the courts of the state to review the action of the tax commission by writ of certiorari or otherwise.

"For the reasons set forth more fully with reference to the tax for the period ending October 31, 1921, I am of the opinion that failure on the part of the corporation or on the part of the receivers to apply to the tax commission for review and revision does not now prevent this court in this proceeding, to which the state of New York comes as claimant, from considering the propriety and legality of the assessment upon its merits.

"In view of the decision in the case of New York Terminal Co. v. Gaus, 204 N. Y. 512, 98 N. E. 11, I am unable to agree with learned counsel for the receivers that operation of the business of a corporation by a receiver is such separate, distinct, and individual operation and so entirely divorced from an exercise of the corporate franchise as to defeat the right of the state to assess a franchise tax, nor am I of the opinion that the distinction raised by counsel, that in the New York Terminal Co. case the franchise exercised was that of a common carrier, a ferry company, is such distinction as to limit the rule there laid down to special franchises of that character.

"If the receivers had carried on the business of the defendant corporation for which it had been brought into existence, for which it had obtained its license in the state of New York and in which it had engaged, I am of the opinion that no successful defense could be interposed to the claim of the state for franchise taxes.

"The evidence, however, does not establish such condition. The tax return as filed and the attached affidavit of William F. Purdy, one of the receivers, dated June 30, 1921, show that the corporation and its officers were restrained from doing business and from interfering with the assets of the defendant in the hands of the receivers. It also shows that there was no net income.

"The evidence offered before the special master, and which was entirely uncontradicted, is set forth in the testimony of John Ernest Allen, one of the receivers called in behalf of the receivers, who testified that the receivers were appointed by order of the United States District Court for the Eastern District of New York on January 7, 1921. During the year 1921, the receivers abandoned contracts previously made by the defendant corporation for the construction of two boats, and entered into new arrangements to complete them for their respective owners, at actual costs. These vessels were completed on March 17, 1921. Under the receivers' control, the corporation had done no manufacturing in the state of New York since March 17, 1921, and the activities of the receivers had been confined to the maintenance of the plant, the liquidation of certain of the assets through sale, and the renting of certain facilities to other parties. The sale of assets and liquidation up to the present time has produced a total sum of $134,000, and the receivers have borrowed in all the net sum of $75,000 upon receiver's certificates, which sum has been used for the maintenance of the physical property of the defendant corporation, covered by a mortgage held by the Chase National Bank of the city of New York. When asked what he meant by maintenance, Mr. Allen said, 'Insurance, pay rolls of the necessary guards in order that the insurance might be valid and repair work necessary to maintain the plant in a reasonable, laid-up, nonoperating condition.'

"When questioned as to the item of rental referred to, he stated that there were several dwelling houses at the plant rented for a very small sum, and that from time to time the receivers had rented part of the water front to people who would tie up vessels there and some others who would tie up and scrape vessels there, and that once they succeeded in renting one of the buildings for a period of pretty nearly a year. The entire amount realized for rentals during the year 1922 was approximately $7,650, while the cost of maintenance of the plant during the same year was $61,373.15. Maintenance was defined as insurance, pay

rolls of the necessary guards in order to keep insurance valid, and repair work necessary to maintain the plant in a reasonable, laid-up, nonoperating condition.

"The business of the defendant corporation was the construction of ships. The dwelling houses referred to were for the incidental housing of employees; the water front was necessary in the operation of the business.

"It was the very failure on the part of the receivers to carry on the business for which the corporation was organized that rendered these facilities idle. They were held by the receivers in the capacity of custodians. The occupation of the vacant dwelling houses was a prudent precaution, tending to decrease the rapid depreciation of otherwise vacant buildings.

"The relatively small income derived therefrom, and from the privilege accorded to strangers to tie up vessels at the water front, which was unused because of the failure by the receivers to operate the business, was in fact a mere reduction of the maintenance cost of the plant as an entirety. The duty of the receivers was primarily to conserve the physical properties of the estate, and the performance of this duty cannot be penalized by construing it to be an exercise of the corporate franchise. Mere ownership or control of property is not sufficient to constitute doing business within the state, and some act must be found consistent with an exercise of the corporate franchise before it can be held that the receivers were transacting business in any manner which would render this estate liable for the payment of the franchise tax.

"In my opinion, the operation of the properties of the defendant corporation by the receivers, during the period commencing November 1, 1921, and ending October 31, 1922, was wholly consistent with the view that their actions were those of mere custodians, except in so far as under the order of the court they have sold assets of the corporation in liquidation. None of their operations constituted an exercise of the corporate franchise of the defendant, nor was the defendant company exercising its franchise at the time of the filing of the return by the receivers on July 1, 1921; nor at any time during the year from November 1, 1921, to October 31, 1922.

"In my opinion, therefore, the claim of the state of New York against the estate of the above-named defendant for a franchise tax for the period ending October 31, 1922, should not be allowed.

Conclusions.

"In conclusion, I find and recommend to the court as follows:

"(1) The claimant, through the Attorney General, having withdrawn from the consideration of the special master that portion of the claim which relates to license tax for the privilege of exercising its corporate franchise within the state of New York amounting to the sum of $9,000, this item should be disallowed.

"(2) The claim for franchise tax based on capital stock for the period ending October 31, 1921, should be allowed in the sum of $2,200 without interest.

"(3) That part of the claim which is for franchise tax, based upon the capital stock for the period ending October 31, 1922, in the sum of $5,783.47 should be disallowed."

Cadwalader, Wickersham & Taft, of New York City (Kenneth E. Walser and Catherine C. Noyes, both of New York City, of counsel), for receivers.

Albert Ottinger, Atty. Gen., of New York (Robert P. Beyer, Deputy Atty. Gen., of New York, of counsel), for claimant.

GARVIN, District Judge. The case is before the court on exceptions taken by the people of the state of New York to the report of a special master, which contains a comprehensive review of the facts and a careful statement of the reasoning upon which he bases his conclusions. There is no occasion, therefore, for a restatement of the case.

[1] I regret that I cannot agree with a report so scholarly in style and evidencing such exhaustive research.

The state of New York claims that the failure of the corporation and of its receivers to take proceedings under the Tax Law of the state of New York (Consol. Laws, c. 60), to review a tax improperly assessed, precludes any review by this court of the propriety of the assessment of such tax, citing In Matter of Gorham Manufacturing Co. v. State Tax Commission of State of New York, 266 U. S. 265, 45 S. Ct. 80, 69 L. Ed. 279, decided November 17, 1924. The learned master has sought to distinguish this case on the ground that there the corporation had made application to the court to enjoin the collection of the tax, whereas in the case at bar, when the assessment was made, the assets of the corporation were in the custody of the court. It does not seem to me that the distinction is well taken. Indeed, in the Gorham Case, supra, it is said, "A taxpayer who does not exhaust the rem-

edy provided before an administrative board to secure the reviewal or correction of a tax cannot be heard by a judicial tribunal to assert its invalidity." No suggestion is there indicated that a taxpayer may be heard under such circumstances, if the matter comes before the court as the result of a claim pressed by the state, and not as the result of an application by the corporation to enjoin the collection of the tax. I can see no justification for holding that, because the receivers took no steps to review the assessment, they thereby acquired any greater rights than the corporation would have had.

This applies particularly to that part of the master's report by which a tax levied is reduced from $7,200 to $2,200. For the reason given the exception of the state of New York is sustained.

[2] The learned master also found that the franchise tax for the period ending October 31, 1922, in the sum of $5,783.47 should be disallowed by reason of the fact that no evidence was produced indicating that the receivers had carried on the corporation's business during this period. It is my opinion that this assessment is not subject to review in this court, for the reason hereinbefore set forth, and for the additional reason that the receivers had the right and did actually to some extent carry on the business of the corporation which thereby became liable to pay the tax. The corporation, which was alleged to be solvent, had all the benefit to be derived from the right to conduct business.

The exceptions are sustained.